Shaw C J.
drew up the opinion of the Court. The statutes in regard to mills, and the rights and liabilities of mill-owners in relation to flowing the lands of others, are to be regarded as statutes in pari materia and to be construed together as one system of regulations.
By the St. 1824, c. 153, § 1, it is provided, that when any person shall complain that he sustains damage in his lands, by their being flowed, whether situated above or below any mill dam, the court may order, &c. It is well settled, that in all these cases, where the party is entitled to his damage upon complaint, under the statute, his common law remedy by an action on the case is taken away.[1] By the statute above cited, it was for the first time provided, that this statute remedy should extend- to any lands situated below any mill dam, and for damages occasioned by water flowing from a mill. Before that time this remedy lay only for damages done to lands situated above a mill dam, and occasioned by raising a head of water by means of such dam.
In the case of Wolcott Woollen Manuf. Co. v. Upham, 5 Pick. 292, a construction was put upon this statute, and it was there held, as under the former one, that where the statute remedy by complaint applies, the common law remedy by action on the case is taken away. It was further held, in that case, that a dam erected several miles above a mill for the purpose of raising a head of water, and creating a reservoir, for the use of such mill, is a mill dam within the meaning of the act, and a remedy for damage done by the water flowing away from the dam of such reservoir, must be sought under the statute. Were the plaintiff’s meadow situated on a natural stream, and the defendants’ dam erected above it, on a natural stream, there would be nothing to distinguish this from the case cited, and the question is, whether the statute can apply to an artificial stream created by means of a canal.
The statute of 1824 makes no distinction in terms or by implication, between a natural stream, and a canal or artificial stream. But, as already suggested, this statute is to he construed with the other statutes in pari materia, and regarded *72 not as establishing a new principle, but as enlarging and extending a beneficial remedy, before given in certain cases, to other analogous cases. The statute of 1796 is but a revision of a former law, and the origin of these regulations is to be found in the provincial statute of 1714. They are somewhat at variance with that absolute right of dominion and enjoyment which every proprietor is supposed by law to have in his own soil; and in ascertaining their extent, it will be useful to inquire into the principle upon which they are founded. We think they will be found to rest for their justification, partly upon the interest which the community at large has in the use and employment of mills, and partly upon the nature of the property, which is often so situated, that it could not be beneficially used without the aid of this power. A stream of water often runs through the lands of several proprietors. One may have a sufficient mill-site on his own land, with ample space on his own land for a mill pond or reservoir, but yet, from the operation of the well known physical law, that fluids will seek and find a level, he cannot use his own property without flowing the water back more or less on the lands of some other proprietor. We think the power given by statute was intended to apply to such cases, and that the legislature meant to provide, that as the public interest in such case coincides with that of the mill-owner, and as the mill-owner and the ownei of lands to be flowed cannot both enjoy their full rights, without some interference, the latter shall yield to the former, so far that the former may keep up his mill and head of water, notwithstanding the damage done to the latter, upon payment of an equitable compensation for the real damage sustained, to be ascertained in the mode provided by the statute. This view is confirmed by the preamble to the provincial act, which recites that “ whereas it has been found by experience, that when some persons in this province have been at great cost and expense for building of mills serviceable for the public good and benefit of the town, and that in raising a suitable head of water for that service it hath sometimes so happened that some small quantity of lands or meadows have been thereby flowed and damnified, not belonging to the owner of such mill, whereby controversies and lawsuits have arisen,” &c.; *73 and then it goes on to provide, that in all such cases, the mill-owners shall have free liberty to continue and improve such pond, for their best advantage, without molestation, directs the mode in which such damages shall be assessed and recovered, and declares, that such proceedings shall be a sufficient bar, against any action to be brought for any damages, occasioned by the flowing of any such lands.
From this view of the object and purpose of the statute, we think it quite manifest, that it was designed to provide for the most useful and beneficial occupation and enjoyment of natural streams and water-courses, where the absolute right of each proprietor to use his own land and water privileges, at his own pleasure, cannot be fully enjoyed, and one must of necessity, in some degree, yield to the other. But we think it would be an extension of the principle not warranted by the statute, if it were so construed as to authorize one person to make a canal or artificial stream in such manner as to lead the water into the lands of another; and in such case, therefore, the right of the party whose lands are flowed, to recover damages by an action at common law, is not taken away or impaired.
It appears by the facts reported, that the sluice and gate, through which the water was drawn which flooded the plaintiff’s meadow, were not placed upon any natural stream, but upon a canal or artificial cut, by means of which the water flowed through the plaintiff’s meadow, where it did not flow before ; and therefore the Court are of opinion, for the reasons before given, that the statute does not apply, and that the plaintiff is not barred by it from his remedy at common law.
We have considered this question, independently of the contract between the parties ; it was so considered at the hearing. The defendants relied upon the statute ; but we think the statute forms no bar. The contract, by which the plaintiff authorized the defendants to make the artificial cut from the pond into his land, does not, we think, put it upon the footing of a natural stream, as contended for by the defendants, so as to bring it within the operation of the statute. This is the only point of view in which it was proper to consider the contract, in relation to this question.
Whatever rights, claims or remedies the parties may have *74 under the contract, or at common law, is a subject of distinct inquiry, not now presented to the Court, and upon which we give no opinion.
2. It was contended at the hearing, that if the plaintiff has any remedy at law, he has mistaken the form of his action, which should have been trespass, and not case, and that for this reason the nonsuit ought to stand. This is often a question of great nicety, depending upon an exact and careful examination of the facts. As the act complained of is not an entry upon the plaintiff’s land, or other direct injury, but the opening of a sluice upon the defendants’ own land, or land upon which they had a right to enter, and discharging the water therefrom, in consequence of which the plaintiff’s meadow was flooded and his hay injured, it would seem, so far as the facts appear, that the damage was consequential and not direct, and of course, that case and not trespass is the proper form of ac tion. But we think this point is not open, upon this motion to take off the nonsuit. The nonsuit was ordered solely upon the ground, that the plaintiff was confined to the statute remedy. If, upon trial, he should not prove facts sufficient to enable him to maintain the action as he has brought it, in case, he must still fail.
3. The same disposition must be made of another point taken by the defendants’ counsel on the hearing, namely, that by the operation of the contract, the defendants have a right to draw off the water in such a manner as they may think proper. The plaintiff was precluded by the nonsuit from bringing the proof, which, as he contended, would show that the defendants had abused the authority, and exceeded the right, granted to them by the contract. As between the parties, the contract must determine their rights. Conventio legem vincit. If the plaintiff cannot show by evidence, that the defendants have done more than by the grant and contract of the plaintiff they had a lawful right to do, he must still fail in his action.

Nonsuit taken off and the cause to stand for trial.

 Rev. Stat. c. 116, § 30.