THE FAIR HAVEN AND WESTVILLE RAILROAD COMPANY
*vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A municipal corporation has only such powers as have been conferred upon it expressly or by necessary implication.

The power of a city to assess benefits is the power to tax, and must be conferred by the legislature.

If there is a reasonable doubt as to the existence of such a power, the presumption is against it.

In 1886 the board of railroad commissioners, of its own motion, ordered the city of New Haven and the New York, New Haven and Hartford Railroad Company, at their joint and equal expense, to remove a dangerous grade-crossing in the city, by carrying the highway over the railroad tracks upon a bridge, and raising the street approaches to conform thereto. The work was not begun until November, 1896, but was finished a few months later. *Held* that the improvement was not a mere change of a highway grade for which the city could, under certain circumstances, assess benefits pursuant to its charter (9 Special Laws, p. 273; 12 id. p. 1115) or by virtue of §§ 2703, 2705 of the General Statutes of 1888, which were then in force, but the elimination by the State, in the exercise of its police power, of a dangerous public nuisance, jurisdiction over which had been given to the board of railroad commissioners, which alone had power, under Chap. 223 of the Public Acts of 1895, to determine what portion of the expense a street-railway company, occupying the highway with its tracks, should pay.

Argued October 27th, 1904—decided January 31st, 1905.

APPLICATION in the nature of an appeal from an assessment of benefits claimed to have accrued to the plaintiff from the elimination of a railroad grade-crossing in New Haven, brought to the Superior Court in New Haven County where a demurrer to the application was overruled (*Shumway, J.*) and afterward, upon the admissions of the answer, judgment was rendered (*Ralph Wheeler, J.*) for the plaintiff, from which the defendant appealed.  *No error.*

*Leonard M. Daggett*, for the appellant (defendant).

*John W. Alling* and *Arnon A. Alling*, with whom was *Samuel C. Morehouse*, for the appellee (plaintiff).

TORRANCE, C. J.   The controlling facts in this case, as set forth in the application and admitted by the answer, are substantially these :  In 1886, Chapel Street in the city of New Haven crossed the tracks of the New York, New Haven and Hartford Railroad Company at grade, and the crossing had become a dangerous one.   To eliminate that crossing the railroad commissioners, of their own motion, in July, 1886, ordered the railroad to be lowered somewhat and the street to be carried over it by a bridge, and the street approaches to the bridge to be so raised as to conform to the bridge, according to a plan prescribed in the order.   Certain parts of the work were ordered to be done by the railroad company, and the rest by the city, at their joint expense, and the work was to be completed within one year from the date of the order.   In November, 1887, the Superior Court, upon an appeal from that order, confirmed it and adopted it as its own, and ordered the work to be done, but extended the time for doing it for two years from November 18th, 1887.   After the expiration of said time, in November, 1889, the city and the railroad company having done nothing in furtherance of said work, a peremptory writ of mandamus was issued against both, commanding them to forthwith complete said work in the manner prescribed in the order. Thereupon the city and the railroad company proceeded with

and duly completed the same as ordered. The applicant is a street-railway company duly authorized to operate a street railway through that part of Chapel Street affected by said work. In 1895 it constructed and has since operated a railway in Chapel Street. Its tracks did not cross the tracks of the steam railroad until the work here in question was completed. Since that time its tracks have been maintained upon the overhead bridge. At no time has the applicant been the owner of any land adjoining Chapel Street, and its sole interest affected by said work was in building, maintaining and operating its railroad over said portion of Chapel Street. In May, 1897, the court of common council of said city ordered the board of compensation to assess benefits and damages to the owners of property affected by said work. Said board, after hearing all parties in interest, including the applicant, made a final report of its doings to the court of common council in March, 1898. In that report the damages and benefits to the applicant were assessed as equal. This report was referred to the committee on streets, and this committee subsequently recommended that the report of the board of compensation be adopted, and that the assessments be laid in accordance therewith. " Afterwards the court of common council of said city, with reference to said report of said bureau of compensation and the said report of its street committee, without any hearing of or notice to the applicant, and without giving the applicant any opportunity to be heard, passed an order purporting to amend said report of said bureau of compensation by assessing benefits against the applicant in the sum of two thousand dollars, and accepting said report with such supposed amendment, and purporting to order an assessment of two thousand dollars to be laid against this applicant, which action of said court of common council was approved by the mayor on October 6th, 1898."

These, in substance, are the facts alleged in the first eight paragraphs of the application, which are admitted by the city. The last two paragraphs alleged in substance: (1) that the court of common council had no power to amend

the report of the board of compensation as it did; (2) that the applicant was not in fact benefited by the work done in eliminating the grade-crossing. These two paragraphs were denied.

The two principal questions presented by the appeal are these: (1) whether the city, upon the admitted facts, had the power to assess benefits against the applicant; (2) was the assessment properly made.

In considering the first question it is to be borne in mind: (1) that the powers of a municipal corporation are only such as have been conferred upon it expressly or by necessary implication; *Dailey* v. *New Haven*, 60 Conn. 314, 319; *Pratt* v. *Litchfield*, 62 id. 112, 118; *Crofut* v. *Danbury*, 65 id. 294; *Central Railway & Electric Co.'s Appeal*, 67 id. 197, 214; (2) that the power to assess benefits is the power to tax and must be conferred by the legislature; *Sargent & Co.* v. *Tuttle*, 67 Conn. 162, 166; *New London* v. *Miller*, 60 id. 112, 116; and (3) that if there is reasonable doubt as to the existence of any such power, the presumption is that it does not exist. *Crofut* v. *Danbury*, 65 Conn. 294.

The order to do the work in question was made in July, 1886, but the work was not begun until after the issue of the peremptory writ of mandamus in November, 1896, and the assessment here in question, though begun in May, 1897, was not completed until October, 1898. In the meantime the city of New Haven had adopted a new or revised charter, which for the purposes of this discussion may be regarded as coming into operation on the second day of June, 1897. Whether the work was completed under the old charter does not, upon the record, clearly appear, but the assessment proceedings against the property of the applicant were begun under the old charter and completed under the new. The power of the city to make the assessment in question, if it exists, must be conferred either by its charter or by the public statutes of this State. We think it is not conferred by either the old or the new charter. The claim that the charter confers such a power is based upon the provisions of § 31 of the old, and § 135 of the new. The old

charter is found in 9 Special Laws, p. 273, and the new one in 12 Special Laws, p. 1115. For the purposes of this discussion, § 135 of the new charter does not in effect materially differ from § 31 of the old. In each the city is made a highway district, over the streets and highways of which the court of common council is given "sole and exclusive authority and control." Section 135 provides as follows: ". . . Said court of common council is hereby authorized and empowered to order, lay out, construct, repair, and alter public squares, parks, streets, highways, sewers, gutters, drains, bridges, and walks, except as herein otherwise provided, whenever and wherever, in the opinion of said court of common council, the public good shall so require, and to order the paving, macadamizing, or other improvement of any street, alley, or highway within said city. . . . The court of common council may, upon the execution of any order for the paving, macadamizing, or other improvement of any street or highway within said city, or upon the construction or alteration of any public sewer or other public work, assess upon the persons whose property is, in the judgment of said court, especially benefited thereby, . . . a proportional and reasonable part thereof, and shall estimate the particular amount of such expense to be paid by every such person upon such assessment." Section 31 of the old charter contained provisions similar to these, expressed in almost the same language.

Unquestionably these provisions confer upon the city power to assess benefits against any one whose property is benefited by any of the things the city is here empowered to do; but the question remains whether the work here involved was one, within the meaning of the charter, for the doing of which the city, under its charter, could assess benefits as against the applicant. The work here in question was the elimination of a grade-crossing, which had become a dangerous one. It was a work which the city, under the provisions of its charter, was not obliged to do; indeed, it was one which upon its own initiation it had no power to do. It was a work of more than local concern, and for

that reason the power to order it to be done did not rest with the city, but almost exclusively with the railroad commissioners. *Cullen* v. *New York, N. H. & H. R. Co.*, 66 Conn. 211. It was a work ordered to be done by the State in the exercise of its police power, through its agent, the board of railroad commissioners, to whom it gave almost plenary power to order what should be done, and how, by whom, and at whose expense, it should be done, and within what time it should be completed. It was ordered to be done by the State through its agent, the railroad commissioners, and the work was done by the State through its agents, the city and the railroad company. *Mooney* v. *Clark*, 69 Conn. 241. The city was compelled to do its part of the work, whether its officers and agents voted to do so or not, and without regard to the question whether the work would be an improvement to the street or of the slightest benefit to the city; and if it had finally refused to do the work, the State might have done it through some other agent and imposed the cost of so doing it upon the city. It is true that the city ultimately performed its part of this work through the ordinary agencies provided for in its charter; but this did not change the essential nature of the work, or make it any the less a special, limited burden imposed upon the city for a limited time, outside of its charter duties and obligations. We are of opinion that no such work as the one here in question is contemplated or provided for in the charters of 1881 or 1897, and consequently that the city had no power under either of said charters to assess benefits against the applicant.

The next question is whether any public statute conferred upon the city power to assess benefits against the applicant. In considering this question, we think that the rights of the parties should be determined as of the time when the city began to perform the order, in the latter part of 1896 or fore part of 1897. At that time there were only three statutes in force which have any direct bearing upon the question under consideration, namely, §§ 2703 and 2705 of the Revision of 1888, and chapter 223 of the Public Acts of

1895. Section 2703 was first passed in 1882, as chapter 73 of the Public Acts of that year. It provided, in substance, that where a town, city, or borough changed the grade of a highway, damages and benefits might be assessed by the municipality to and against owners of land adjoining the highway. Clearly this section, limiting, as it does, the power to assess benefits to cases where the property benefited adjoins the highway, gave the city no power to make the assessment here in question. The other section above referred to (§ 2705) reads as follows : " The proper authorities of any city or borough, unless otherwise provided in its charter, may assess . . . the benefits accruing to any person by the layout, grading, or any alteration of any highway," etc. This must be read in connection with chapter 223 of the Public Acts of 1895, which provides in effect that the railroad commissioners may, in a case like the present, order the street-railway company to pay such reasonable part of the expense of eliminating a grade-crossing as they may deem proper. This Act, we think, puts the whole matter of benefits to be paid by a street-railway company, in a case like the present, into the hands of the railroad commissioners ; and its provisions are inconsistent with the existence of a power in the city to assess benefits against the applicant in a case of this kind. We think that § 2705, when read in the light of this Act of 1895, confers no power upon the city to make the assessment here in question. In brief, we think that the statutory and charter provisions upon which the city relies, when read in the light of our legislation in reference to grade-crossings and street railways, fail to show that the city had the power to make the assessment here in question.

In this view of the case it is unnecessary to consider the other questions raised upon the appeal.

There is no error.

In this opinion the other judges concurred.