THE STATE OF CONNECTICUT EX REL. ALBERT R. MALKIN *vs.* WILLIAM H. McMAHON ET ALS.

Third Judicial District, New Haven, June Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

By an Act of the legislature in 1913 (16 Special Laws, p. 1038), the town of Norwalk, the cities of Norwalk and South Norwalk, and the East Norwalk fire district, were consolidated and incorporated as a new municipality known as the city of Norwalk. The Act divided the new city into five taxing districts: the first taxing district comprising the former city of Norwalk; the second, comprising the former city of South Norwalk; and the third, which was the former East Norwalk fire district. The territory covered by these three comprised the fourth taxing district, while the fifth comprised the entire new city of Norwalk. Each of the first three districts was made a body politic and corporate, was vested with the ownership and with the exclusive management and control of the real estate and public utilities formerly owned by its municipal predecessor, and each was expressly made liable to taxation to defray the burdens and expenses incident thereto. *Held* that the main purpose of the scheme of taxation was to leave the incidence of the local burden just where it was before the consolidation, so that none of the districts representing separate municipalities should be subjected to additional taxation for the then-existing local burdens and expenses of another district, except to the extent

expressly prescribed by the Act; and that the expense of lighting the streets and highways within the first taxing district was chargeable to it alone.

The grant, in municipal charters, of a power to exercise a necessary governmental duty, accompanied by the grant of means fully adequate to carry it into effect, when followed by the acceptance of the franchise, is equivalent to an express imposition of an obligation to exercise the power.

Submitted on briefs June 5th—decided July 13th, 1914.

APPLICATION for an alternative writ of mandamus requiring the respondents, comprising the Board of Estimate and Taxation of the City of Norwalk, to make certain deductions in the tax rate of the first taxing district and corresponding additions to the tax rate of the fourth taxing district, brought to and reserved by the Superior Court in Fairfield County, *Tuttle, J.*, upon an agreed statement of facts, for the advice of this court. *Superior Court advised to quash the alternative writ.*

*Louis Goldschmidt*, for the relator.

*John S. Pullman*, for Fletcher H. Montgomery *et al.*

*William F. Tammany*, *John H. Light* and *John J. Walsh*, for the board of estimate and taxation.

BEACH, J. The General Assembly of 1913 passed an Act consolidating the town of Norwalk with the cities of Norwalk and South Norwalk and the East Norwalk fire district, and incorporating the city of Norwalk, whose boundaries include the whole territory formerly occupied by the above-named municipalities. 16 Special Laws, p. 1038. The Act divides the new city into five districts for purposes of taxation: the first taxing district, which was the former city of Norwalk;

the second taxing district, which was the former city of South Norwalk; the third taxing district, which was the former East Norwalk fire district; the fourth taxing district, which is the territory included in the first, second, and third taxing districts above described; and the fifth taxing district, which is the entire new city of Norwalk.

The general scheme of taxation provided for, contemplates that the fifth district shall assume all the burdens formerly borne by the town of Norwalk; that the first, second, and third districts shall each assume, to some extent, the local burdens formerly carried by its municipal predecessor; and that certain other taxes for city, as distinguished from ordinary town, expenses, shall be borne by the fourth district, which includes the entire urban district of the new city.

This controversy presents the question whether the expense of lighting the streets of the first district is to be borne by the first district separately, or by the fourth district.

The first district is a body politic and corporate, and has a separate board of commissioners and a treasurer, whose duties are prescribed by the Act. The same is true of the second and third districts, respectively. The fourth district is not a body politic or corporate, being merely a geographical division of the city for certain specified purposes, including certain taxing purposes. The general supervision and control of the finances and taxation of the entire city is vested in a board of estimate and taxation appointed by the mayor.

The commissioners of the first district, as required by the Act, presented to the city treasurer estimates and requests for appropriations, covering the expenses to be separately borne by the first district, for the fiscal year next ensuing, not including any estimated expense

of lighting the streets of the first district. The board of estimate and taxation added to these estimates an appropriation of $10,300 for that purpose, and increased by that amount the taxes to be separately assessed upon the district. This amount of $10,300 represents the agreed price for lighting the streets of the first district for the fiscal year next ensuing, as provided in an existing contract between the former city of Norwalk and the local electric lighting company. The contract in question was in force at the passage of the Act of consolidation, and runs for the period of three years from December 1st, 1912.

The relator is a citizen and taxpayer of the first district, and brings this writ of mandamus to compel the board of estimate and taxation to eliminate this item of $10,300 from the separate assessment list of the first district, and to include it in the list of the fourth district.

The precise question is whether the expense of lighting the streets of the first district, which was formerly the city of Norwalk, is properly chargeable, under the Act, to the first district separately, or to the fourth district, which includes also the former city of South Norwalk and the East Norwalk fire district. Its decision involves, also, the larger question whether the cost of street lighting is included among the "burdens, expenses, and liabilities" of the former municipalities which are expressly imposed upon the first, second, and third districts, as successors to the rights, property, and obligations of the city of Norwalk, the city of South Norwalk, and the East Norwalk fire district, respectively, or whether the total cost of lighting these three districts was intended to be distributed throughout the fourth district by a uniform rate of taxation.

The scheme of taxation outlined by the Act is well defined in its general outlines, as will appear from the

following references to the Act: Section 10 provides that the fifth district shall assume the expenses formerly borne by the town of Norwalk, also the expenses of the board of health, and certain salaries and office expenses of elective city officials; and that all expenses of permanent pavements "shall be borne by said fourth taxing district." The distribution of all other taxes is generally provided for as follows: "All other burdens and expenses of the city shall be met by taxes levied upon the inhabitants and property within the limits of the fourth taxing district, and it shall be the duty of the assessors to indicate in the completed list of the city, and by separate lists, the property and amount thereof taxable in each of the several taxing districts herein created, and the money derived from the taxation of the inhabitants and property of each of the aforesaid taxing districts shall not be used for any other purpose than to defray the burdens and expenses of such taxing districts as herein imposed."

Evidently a distinction is made between the words "shall be borne by said fourth taxing district" and the words "shall be met by taxes levied upon the inhabitants and property within the limits of the fourth taxing district," the latter phrase meaning that the expense in question may be assessed either upon the fourth district, as such, or may be separately assessed upon any one of the three taxing districts included in the fourth district.

The Act next specifies in detail the powers and duties of the several taxing districts, except the fifth. Sections 11 to 21 relate to the first district, and, so far as material to this case, they provide that it shall succeed to all the property of the former city of Norwalk, and have the ownership, management, and control of the water-works formerly owned by that city. It is also provided that "all the inhabitants and property within

the limits of said first taxing district shall be liable to taxation to defray any burdens, expenses, and liabilities of the former city of Norwalk at the passage of this Act and such other liabilities as said taxing district may incur under the provisions of this Act."

These enactments are certainly sufficient to specifically impose on the first district the existing obligations of the city of Norwalk under its street-lighting contract, and to subject the inhabitants and property within the first district to taxation for any liability of the former city of Norwalk under such contract existing at the passage of the Act.

Sections 22 to 33 relate to the second district, and contain similar provisions in respect of the assumption by the second district of the rights, property, and obligations of the former city of South Norwalk, and making the inhabitants and property within the second district liable to taxation to defray its "burdens, expenses, and liabilities."

The former city of South Norwalk owned its electric lighting and power plant, as well as its water-works, and the Act gives to the second district the ownership, management, and control of both of these public utilities.

Section 25 provides that the second district shall elect a board of electrical commissioners, who shall have all the powers and discharge all the duties of the former board of electrical commissioners of the former city of South Norwalk, and those prescribed by chapter 122 of the General Statutes relating to municipal gas and electric plants. Section 28 provides that any net profits of the electric plant, after all indebtedness of the plant has been paid, shall be applied in reduction of the debt of the second district; and § 29 provides that any deficiency of income to meet current expenses and interest on indebtedness shall be made up by taxing

"all property and persons liable to taxation in said district."

The East Norwalk fire district also owned its electric plant, and §§ 34, 39, and 40 of the Act give to the third district similar rights of ownership, management, and control of the plant, and similar rights and obligations in respect of the separate use of any profits, and separate liability to taxation to make good any deficit.

Sections 44 and 45 provide that the city, at the expense of the fourth taxing district, shall maintain the sewer systems of the first, second, and third districts, and shall maintain the police and fire departments of the cities of Norwalk and South Norwalk and of the East Norwalk fire district until the city shall establish a police and a fire department for the entire fourth district; also that the city shall maintain the garbage-disposal plant of the second district at the expense of said district until it shall establish a like plant for the fourth district.

Section 80 enumerates the powers of the city council, who are chosen at the general city election, and included among such powers are the following: "to regulate the erection and maintenance of lamp posts, telegraph, telephone, and electric light poles and conduits, wires, and fixtures; to provide for public lighting of streets and to protect the same from injury; . . . to make, repair, clean, light, and keep open and safe for public use and travel, and free from encroachment and obstruction, the streets, highways, sidewalks, gutters, and public grounds."

These are the provisions of the Act which bear most directly on the question at issue, and they make it clear that street lighting is one of the "burdens, expenses, and liabilities," existing at the passage of the Act, which were intended by the Act to be imposed upon the first, second, and third districts, separately, as the

successors in right and obligation to their respective municipal predecessors. The Act constitutes the first, second, and third districts separate municipal corporations for certain limited purposes, subject, in these respects, to the general supervisory control of the consolidated city. It specifically confers on the second and third districts, respectively, the ownership, management, and control of the municipal electric lighting plants in each district; conferring on these districts in the Act itself, and by reference to the General Statutes, the powers usually possessed by municipalities operating such plants. To this extent the Act is substantially a charter creating these municipalities and defining their powers; and it is well settled that in such charters the grant of a power to exercise a necessary governmental duty, accompanied by the grant of means fully adequate to carry it into effect, when followed by the acceptance of the franchise, is equivalent to an express imposition of an obligation to exercise the power. *Gates* v. *Boston & New York Air Line R. Co.*, 53 Conn. 333, 342, 5 Atl. 695; *New York, N. H. & H. R. Co.* v. *Bridgeport Traction Co.*, 65 Conn. 410, 423, 32 Atl. 953; *Water Commissioners* v. *Manchester*, 87 Conn. 193, 201, 87 Atl. 870; 1 Dillon on Municipal Corporations (5th Ed.) § 246 and note.

The second and third districts are therefore obligated to light their own streets, and, by the express language of the Act, to light them at their own expense. For like reasons the first and second districts are obliged, by the grant of municipal water, water-works, and the express language of the Act, to sprinkle their own streets at their own expense.

So, also, the former city of Norwalk was, at the passage of this Act, bound to light its own streets, and we think that obligation, among others, was intended to be imposed upon its successor, the first district of

the consolidated city, by the words already quoted: "All the inhabitants and property within the limits of said first taxing district shall be liable to taxation to defray any burdens, expenses, and liabilities of the former city of Norwalk at the passage of this Act," etc.

The relator reads these words as referring only to unsatisfied obligations due or performable at the passage of the Act, and not as relating to any continuing municipal burdens and expenses, except such as are elsewhere specially mentioned, to wit: in the case of the first district, the care and maintenance of the real estate, public library, and water-works formerly belonging to the city of Norwalk.

We think, however, that the language above quoted expresses a part of the general scheme for the distribution of taxation for municipal expense among the several taxing districts of the new city.

The relator's theory of the distribution of taxation would make the fourth district, as such, liable to be taxed for all non-enumerated burdens and expenses of carrying on the municipal government, except those burdens and expenses formerly imposed by law upon the town of Norwalk. If that theory were correct, we should expect to find in the Act some comprehensive language expressly imposing such burdens and expenses on the fourth district. But there is no such language, and we find, instead, that sewers, fire and police departments, and garbage-disposal plant are specifically mentioned as the only municipal agencies expressly required to be maintained by the city "at the expense of the fourth taxing district."

The only general language expressly imposing liability for taxation for burdens and expenses not enumerated, is in connection with the city at large, which is made to assume the "burdens and expenses" of the former town, and in connection with the first, second, and third

taxing districts, each of which is expressly made liable to taxation to defray the "burdens and expenses" of its own municipal predecessor. It is quite consistent with this general scheme for the distribution of taxation, that each of these districts should be expressly vested with the ownership of, and the exclusive management, control, and financial responsibility for, the real estate and public utilities formerly owned by their respective predecessors. The main purpose of the scheme of taxation is to leave the incidence of local taxation just where it was before the passage of the Act of consolidation, so far as is reasonably consistent with the new form of municipal government; so that none of the four districts representing separate municipalities should be subjected to additional taxation for the then existing local burdens and expenses of another district, except to the extent expressly provided for in the Act. Neither is it inconsistent therewith that the general administrative control over all the affairs and activities of the new city should be vested in a central council.

The relator's theory as to the incidence of taxation would put upon the second and third districts the burden of lighting their own streets, and also of paying more than half the expense of lighting the streets of the first district. It would also require the first and second districts to bear separately the entire expense of sprinkling their own streets and, in addition, to pay nearly seven eighths of the cost of sprinkling the streets of the third district; and it would compel the second district, which owns both water-works and electric plant, to sprinkle and light its own streets and to pay, in proportion to their respective grand lists, toward the cost of lighting the streets of the first district, and of sprinkling the streets of the third district. It is inherently improbable that the legislature intended to state so unequal a rule of local taxation, and still

more improbable that these municipalities would have accepted this charter, knowing that it stated such a rule.

For the reasons above stated, the Superior Court is advised to grant the respondent's motion to quash the alternative writ, and to dismiss the complaint.

Costs in this court will be taxed in favor of the respondents.

In this opinion the other judges concurred.