THE BOARD OF WATER COMMISSIONERS OF THE CITY
OF HARTFORD *vs.* ALLISON MANCHESTER.

THE BOARD OF WATER COMMISSIONERS OF THE CITY
OF HARTFORD *vs.* ALLISON MANCHESTER ET AL.

THE BOARD OF WATER COMMISSIONERS OF THE CITY
OF HARTFORD *vs.* EMMA MANCHESTER ET AL.

First Judicial District, Hartford, October Term, 1915.
THAYER, RORABACK, WHEELER, BEACH and GREENE, Js.

The maintenance of a uniform, normal flow of a stream is of general
benefit and utility to the community, and therefore the legislature
may authorize the taking of private property for the purpose of
building a dam and reservoir to impound surplus or freshet water
and return it to the stream in times of scarcity. Moreover, such a
project may form part of a plan, authorized by the legislature, for
increasing and improving a city's water-supply, as in the present
case.

It appeared, in the present case, that the petitioner had entered into
an agreement with certain lower riparian mill owners who had
theretofore opposed its application, to construct and maintain, if
authorized so to do by the General Assembly, a so-called com-
pensating reservoir on the east branch of the Farmington River
"for the sole purpose of securing a more uniform flow of said river,"
and to place the control of the flow therefrom in the hands of a
corporation composed of the water-power owners on the river;
and that in consideration thereof they had promised not to oppose
the plaintiff's application for authority to divert the waters of the
west branch of the river to city uses, and had agreed to accept in lieu
thereof, *pro tanto,* the increased flow from the compensating reser-
voir on the east branch. In a suit for the appointment of a com-
mittee to estimate damages for taking the respondent's land for
the purpose of constructing and maintaining the compensating
reservoir, it was *held:*—

1. That this private agreement could not impair or affect the public
nature or character of the use for which the land was to be taken,
nor alter the mode or manner of using the impounded water as
prescribed by the legislature in the common interest of all lower
riparian owners.

2. That having asked for the identical charter amendment which the legislature granted, the petitioner was not bound to pass a vote or resolution accepting the Act and indicating its intention to build the compensating reservoir therein authorized, before it sought to condemn the respondent's land for that purpose.

3. That the legislature had itself determined the necessity of taking the respondent's land for the construction of the compensating reservoir, by fixing, in § 4 of the Act, the location of the dam and reservoir, as shown in the exhibits, and therefore there was no reason for a formal vote of the petitioner reciting or declaring the necessity for the taking of such land as a condition precedent to commencing court proceedings for its condemnation.

The respondent alleged, as one defense, that the taking of his property for the purpose set forth in § 4 of the Act, deprived him of it without "due process of law." *Held* that this was a repetition of the main question in the case, of which the respondent had had full benefit; and that as a separate defense it was properly stricken out, being nothing more than a mere conclusion as to the legal effect of the Act underlying the litigation.

Having alleged what a party's "sole intent" was, it is unnecessary and immaterial to allege any or all the things which he did not intend to do.

A ruling expunging a portion of a defense is harmless, if it has no effect in narrowing the issue tendered by such defense.

Argued October 5th—decided December 17th, 1915.

PETITION for the appointment of a committee to estimate land damages in condemnation proceedings, brought to and heard by the *Hon. William S. Case*, a judge of the Superior Court, upon a motion to expunge certain allegations of the answer and a demurrer to others; the judge granted the motion, sustained the demurrer, and afterward rendered judgment in favor of the petitioner, from which the respondent appealed. *No error.*

Two other cases—*Board of Water Commissioners of the City of Hartford* v. *Allison Manchester et al.* and *Board of Water Commissioners of the City of Hartford* v. *Emma Manchester et al.*—were argued with, and upon the record printed in, the above-entitled cause. *No error in either case.*

*Birdsey E. Case,* with whom was *Andrew J. Broughel,* for the appellant (respondent).

*William Waldo Hyde* and *Edward M. Day,* for the appellee (petitioner).

BEACH, J. In this cause a demurrer to the petition was originally sustained by the trial judge, and judgment rendered for the respondent. Upon appeal this court reversed the judgment and remanded the cause to the *Hon. William S. Case,* a judge of the Superior Court, to be proceeded with according to law. The respondent then answered the petition, setting up seven separate defenses. The second defense was stricken out, and portions of the third and fourth defenses were expunged on motion; the fifth, sixth and seventh defenses were successfully demurred to, and after amendment, the fifth and sixth defenses were again demurred to and the demurrers sustained. All the issues of fact presented by the remaining defenses were found for the petitioner, and judgment was rendered appointing three disinterested freeholders to estimate and report the compensation to be awarded the respondent. The other material facts are sufficiently stated in the former opinion. *Water Commissioners* v. *Manchester,* 87 Conn. 193, 87 Atl. 870.

Broadly speaking, the respondent's assignments of error are based upon three claims of law: that his land has been taken for a private and not for public use; that the petitioner was bound, as a condition precedent to the filing of the petition, to have passed either a general vote accepting the provisions of the Act of 1911, or a specific vote taking, or declaring the necessity for taking, the respondent's land; and that the trial judge erred in granting the motion to strike out and expunge certain parts of the answer.

Upon the issue of public or private use, the respond-
ent makes the same claims which were made and over-
ruled on the former appeal, namely, that the compen-
sation-reservoir for restoring and maintaining the
normal flow of the Farmington River, as described in
§ 4 of the Act of 1911, is in itself a private undertaking
for private ends, and that its construction and main-
tenance are not in furtherance of the admittedly pub-
lic purpose of improving the water-supply of the city
of Hartford.

In so far as these claims rest upon the construction
of the Act of 1911 standing by itself, they have already
been determined adversely to the respondent; but it
is now insisted that a new light is thrown on the con-
struction of § 4 of the Act by the production of the
contract, Exhibit 4, entered into before the passage
of the Act between the petitioner and certain owners
of water-powers on the Farmington River who ob-
jected to any diversion of its waters.

Before the contract was made a prior application,
brought by the petitioner to the General Assembly of
1909 for authority to take the waters of Nepaug River
and Phelps Brook to improve the water-supply of the
city of Hartford, had been defeated because of the
supposed irretrievable damage that such diversion
would occasion to the owners of water-powers on the
Farmington River. The contract embodies an agree-
ment between the petitioner and the objecting owners
of water-powers upon a plan for satisfying their ob-
jection to the diversion of water from the west branch,
by building a compensating-reservoir on the east
branch. After reciting that the petitioner has already
applied for authority to divert from the Farmington
River the waters of Nepaug River and Phelps Brook,
and that the owners of water-powers object to such
diversion, the contract states that the petitioner now

proposes to obtain authority for the construction of another reservoir to store the waters of the east branch of the river, and in the event that the General Assembly should grant such authority, it is agreed that the petitioner shall, before diverting any water from Farmington River, "and for the sole purpose of securing a more uniform flow of said river," build a storage-reservoir of agreed capacity on the east branch. The substance of the rest of the agreement is that the storage-reservoir is to be built, maintained and operated at the sole cost and risk of the petitioner, that the control of the flow of water therefrom shall be wholly in the hands of a corporation composed of the owners of water-powers on the river, that the latter agree not to oppose the petitioner's application for authority to divert the waters of Nepaug River and Phelps Brook, and that in determining the damages for such diversion, the additional water received to their use from the proposed east-branch reservoir shall be treated as compensation on account of the proposed diversion from the tributaries of the east branch.

We are not able to agree with the respondent's claim that this contract demonstrates the compensation-reservoir to be purely a private enterprise. The respondent claims that the contract makes it apparent that his land will be taken for the purpose of buying off the opposition of lower riparian owners to the proposed improvement of the water-supply of the city of Hartford, and for the purpose of enabling the petitioner to pay damages in terms of water-power instead of in cash. It is a sufficient answer to these objections to say that both the improvement of the water-supply of the city of Hartford and the restoration or improvement of the flow of the Farmington River are in themselves public uses, and the fact that the lower riparian owners were opposed to the diversion of a part of the

waters of Farmington River for the improvement of the water-supply of the city of Hartford, unless compensated for the threatened injury to their water-power by a restoration of the normal flow of the river, has nothing to do with the decisive fact that each of these projects is in itself for a public purpose.

The question whether the petitioner, or the lower riparian owners, or both, were actuated by such selfish motives in asking for and consenting to the grant of authority to construct the compensation-reservoir, that the authority ought not to have been granted, was a question with which the legislature alone was competent to deal. After the legislature has granted the power, the only questions affecting the validity of the grant which the courts can pass upon are whether the compensation-reservoir is for a public use and whether it is to be administered for the public benefit. On this latter point the respondent claims that the contract shows that the flow of water from the dam is to be controlled for the private advantage of the owners of water-powers who are members of the corporation referred to in the contract; and the answer to that claim is that the corporation and its members are bound by the limitations of § 4 of the Act of 1911, and by the contract, Exhibit 4, and by the general law of the State, to use their control of this reservoir with reasonable regard to the common benefit of all lower riparian owners, to the same extent that the petitioner would be bound to so use it, if it had retained the control of the reservoir in its own hands.

It follows that so far as the question of public use is concerned, this case stands now as it stood on the former appeal, and we have nothing further to add to the former opinion except to repeat our conclusion that the preservation of the flow of the Farmington River is a public use, and that the construction and

maintenance of a reservoir for that purpose was properly regarded by the legislature as a part of the general plan for improving the water-supply of the city of Hartford. Assignments of error numbered one and twelve are overruled.

The fourth and sixth assignments of error are based on rulings of the court sustaining the demurrers to the fifth defense and to the fifth defense as amended, and bring up the question whether the petitioner was bound to pass a vote affirming its intention to build the compensating-reservoir provided for in § 4. The petition alleges, and the court has found as a fact, that the petitioner does intend to build the reservoir and has prepared plans and surveys for that purpose; but the claim is that such intent must be evidenced by a vote or resolution in the nature of an acceptance of the powers conferred by the Act and of the terms and conditions of the grant. It is doubtless the rule that when a private corporation is created by a special charter, an acceptance of the charter is a condition precedent to the corporate existence, because the State cannot compel any person to belong to a corporation unless he assents to the conditions imposed on such membership by the charter. Such acceptance must be by the corporators named in the charter acting as such, but it need not be evidenced by a formal vote, for that rule would lead to many practical complications; and so it is generally agreed that an acceptance of the powers and duties imposed in the charter may be presumed from the exercise of the corporate powers. It is necessary to refer only to Mr. Justice Story's remarks on this point in *Bank of the United States* v. *Dandridge,* 25 U. S. (12 Wheat.) 64, 71. When, as in this case, the corporation is already in existence, the legislature, so long as it keeps within constitutional limits, may amend its charter without the assent of the corpora-

tion. But all discussion as to the necessity of any subsequent assent is unnecessary, in view of the fact that the petitioner itself applied for the passage of the Act in question, and gave its assent in advance. *Atlanta v. Gate City Gas Light Co.*, 71 Ga. 106, 117; 1 Morawetz on Corporations (2d Ed.) § 23.

Assignments of error numbered five, seven, eight, nine, ten and eleven, raise the question whether the petitioner was required, as a condition precedent to bringing this petition, to pass a vote taking, or affirming the necessity for taking, the respondent's land. No such vote was taken before the petition was filed, but the court admitted, over the objection and exception of the respondent, the record of a resolution passed in 1914 ratifying all that had been done in the premises. It also admitted, over objection and exception, the testimony of two civil engineers, to the effect that they had been instructed by the Board of Water Commissioners of the City of Hartford to prepare, and that they had prepared, plans for the compensating-reservoir, which plans the court finds are in accordance with the terms and provisions of § 4 of the Act. The court also finds that the respondent's land is necessary for the construction of such dam and reservoir, and is described as Parcel No. 42 in a survey showing the land necessary to be so taken, which survey was made prior to the bringing of the petition; and that the petitioner has been unable to agree with the respondent as to the amount of compensation to be paid for his land. The petitioner has complied with all the provisions of the Act of 1911 in pursuance of which this proceeding is brought. The Act does not require the petitioner to designate by vote the particular parcels of land which are necessary to the construction of the reservoir, and unless such a vote is otherwise required by law, none is necessary. The necessity for such a preliminary identification of

the land to be taken arises in those cases in which the legislature has delegated to the condemnor the power to select the particular property which is to be taken for a public use; as where it authorizes the building of a railroad between terminal points, leaving the right of way to be located by the condemnor. In such cases the condemnor is vested, primarily at least, with the power to determine what land is necessary to be taken, and this determination is conclusive unless and until it is successfully attacked for unreasonableness, bad faith or abuse of power. *Water Commissioners* v. *Johnson*, 86 Conn. 151, 158, 84 Atl. 727.

The theory is, that until the condemnor exercises its power there has been no determination that the land sought to be condemned is necessary to be taken, and therefore no foundation for the institution of condemnation proceedings. Such a theory is, of course, inapplicable to a case where the legislature itself has determined what land is necessary to be taken; and if the location of this dam and reservoir was fixed in advance by § 4 of the Act, so that the necessity for taking the respondent's land was determined by the legislature in passing the Act, there was no reason for a formal vote of the petitioner authorizing or directing the taking of the respondent's land. That part of § 4 of the Act which is material on this point is as follows:—

"Said board of water commissioners is hereby further authorized to build, on the East Branch of the Farmington River, which enters the Farmington River at a point four and one-half miles, more or less, above said Collinsville, a dam at a point on said East Branch of the Farmington River in the vicinity of the iron bridge over said East Branch near Richards corner so called, in the town of New Hartford, with all necessary spillways, locks, gates, and appliances for regulating the discharge and flow of water, according to the plans

for the construction of said dam which have been prepared by said board of water commissioners, which dam shall be not more than seventy feet high above the bed of said East Branch at the point where the same is built, and there to construct a reservoir for storing and ponding the waters of said East Branch of the Farmington River." 16 Special Laws, p. 390.

The petitioner is confined by this Act to the erection of a dam not more than seventy feet high near the iron bridge, according to plans theretofore prepared. It is said that the location of the dam at a point in the vicinity of the iron bridge over said east branch near Richards Corner, so-called, is not a definite location; but inspection of the topographical map (Exhibit 2) of the valley of the east branch of the Farmington River, which, as the trial judge finds, was before the committee on cities and boroughs of the General Assembly of 1911 at the time of the hearing upon the petitioner's application, shows several proposed sites for the dam. Each site was definitely located on the map, and the lowest site was near a highway crossing marked "Richards Corner." This is evidently the location referred to in the contract, Exhibit 4, which contract was entered into before the passage of the Act, by the words: "The lower site so-called near the iron bridge." There was, also, before the committee, a plan (Exhibit 1) of the proposed compensating-reservoir showing the dam located at the same point near Richards Corner, and showing the area of land which would be flooded by it; together with a proposed layout of new highways to take the place of those which would be rendered impassable by the construction of the reservoir. We think that § 4 of the Act, when read in the light of these exhibits, locates the dam at a definite site which was shown on the plans submitted to the committee on cities and boroughs, and that the legislature determined in

advance what land was necessary to be taken for the purpose of building the proposed reservoir, as shown by the plans then submitted, which were doubtless based upon actual surveys. However that may be, the trial judge has found that the respondent's land is necessary to be taken in order to construct the reservoir in accordance with the terms and provisions of the Act; and that finding settles the fact that the respondent's land was included in the land which the legislature did, by reference to the plans then before its committee, determine to be necessary for the construction of this reservoir.

It follows that the petitioner was not bound to pass a vote taking, or declaring the necessity for taking, the respondent's land, as a condition precedent to the bringing of these proceedings, and that the assignments of error founded on the claim that such a vote was necessary should be overruled. The respondent was fully notified, by the negotiations which resulted in the disagreement as to the amount of the compensation to be paid for his land, that it was necessary for the construction of the reservoir, and the petitioner has complied with all the requirements of the Act before bringing this petition.

The second assignment of error relates to the granting of a motion to strike out the second defense, which alleges that the taking of the respondent's land for the purposes set forth in § 4 of the Act of 1911, deprives the respondent of his property without due process of law.

That is a defense of which the respondent has had the full benefit without pleading it, for it presents the underlying question of law which has been argued and determined in both of these appeals. The defense was properly stricken out, for it is nothing more than a conclusion as to the legal effect of the Act of 1911, and was not pleadable as a separate defense.

The third assignment of error complains of the ruling of the court in expunging a portion of the third defense. This defense alleged (1) that the petitioner did not intend to use the respondent's land for the storage of water to form part of the water-supply of the city of Hartford; and (2) that it did intend to use such water solely to return it to Farmington River under such contracts, etc., as would result merely in pecuniary benefit to the petitioner.

The negative allegation of intent was expunged. We are unable to see that the ruling of the court on the motion to expunge had any effect in narrowing the issue tendered by the third defense. It was unnecessary to plead any or all of the things that the petitioner did not intend to do. Besides, the affirmative allegation that the petitioner intended to use the water "solely" to return the same to Farmington River, etc., necessarily involved the negation of any intent to use the same water as part of the water-supply of the city of Hartford. The negative allegation of intent was therefore prolix and immaterial, and was properly expunged.

There is no error.

In this opinion the other judges concurred.