NORTHEASTERN GAS TRANSMISSION COMPANY *v.* JULIA M. COLLINS ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued February 7—decided March 6, 1952

*David S. Day* and *Daniel F. Wheeler,* with whom were *W. Arthur Countryman, Jr.,* and *Arthur C. Williams,* for the plaintiff.

*James N. Egan,* with whom was *Dennis P. O'Connor,* for the defendants.

O'SULLIVAN, J. Upon this reservation for the advice of this court, it was stipulated that the following facts were found by the trial court. The plaintiff is a Delaware corporation engaged in the business of supplying natural gas by pipe line. It holds a certificate of public convenience and necessity issued by the federal power commission pursuant to the provisions of the Natural Gas Act of 1938. 52 Stat. 821, 15 U. S. C. § 717, as amended, 61 Stat. 459, 15 U. S. C. § 717f (h) (Sup. 4, 1951). The certificate authorizes the plaintiff to construct and operate natural gas pipe lines and appurtenant facilities in Connecticut and to sell its product to specified public utility corporations now engaged in distributing gas to the public in various sections of the state.

The plaintiff is presently engaged in acquiring easements needed in the laying of a proposed pipe line within the state. The line, as planned, is to cross the defendants' property in the town of Farmington. The plaintiff is seeking to obtain therein a right of way fifty feet in width. Only the inner thirty feet are sought for a permanent easement. The outer ten feet on each side are needed solely for the purpose of providing ample space for the movement of heavy equipment used in the installation of the pipe. The temporary interest in these ten-foot strips will automatically expire one year from the completion of the construction work on the defendants' property but, in any event, not later than two years after the interest has been acquired.

In 1950 the General Assembly passed an act entitled "An Act concerning Natural Gas Pipe Line Companies." Public Act No. 3, Spec. Sess., March, 1950; General Statutes, Cum. Sup. 1951, §§ 1072b-1078b. Pursuant

thereto, the plaintiff has qualified as a corporation authorized to exercise the power of eminent domain. Through its board of directors it has formally declared that the easements mentioned above are necessary for the installation of its pipe line. Since the parties cannot agree upon the value of the property to be taken, the plaintiff has filed its petition in the Superior Court praying that a committee of three disinterested persons be appointed to assess just damages, and asking for an order permitting the plaintiff to enter upon the defendants' land to make a survey of the right of way.

The parties seek our advice on the two questions stated in the footnote.[1] The first requires us to determine the validity of the act of 1950 to which we have just referred. The act, as passed, consists of eight sections. The first recites that any corporation organized under state or federal law for the purpose of constructing and operating a natural gas pipe line is authorized to acquire by condemnation variously described interests in land which are necessary for the construction, maintenance and alteration of the pipe line, provided the corporation holds a certificate of public convenience and necessity issued under the federal Natural Gas Act, and provided, further, that the corporation shall pay all damages for the taking. Section 2 makes the exercise of the right of eminent domain contingent upon the filing with the secretary of state of a certified copy of the certificate of public convenience and neces-

---

[1] (A) Is an act entitled "An Act concerning Natural Gas Pipe Line Companies," passed at the special session of the General Assembly held in March, 1950, and approved May 26, 1950, unconstitutional?

(B) Is the plaintiff authorized under the provisions of the act to acquire by condemnation a temporary easement for a right of way not exceeding ten feet in width on each side of and immediately adjacent and parallel to the permanent easement, to be used for construction purposes only?

sity issued under the federal act and, if the corporation is not a domestic one, upon its qualifying to do business in this state. Section 3 enumerates certain lands and interests which are granted immunity from condemnation. Section 4 sets up legal procedure for the corporation to follow to obtain a judicial determination of the value of the property taken, should the parties be unable to reach an agreement thereon. Section 5 designates the circumstances under which, and the method by which, the court may permit the corporation to gain immediate possession of the land. Section 6 deals with the manner in which the line shall be constructed. Section 7 forbids the sale of gas in any area within which another is doing so under a franchise, unless that other gives its consent or the sale is permitted by the public utilities commission. Section 8 provides that the act shall take effect upon its passage.

The defendants have assailed the constitutionality of the act. When a question of that nature is raised, we should approach it with great caution and examine it with infinite care. We must make every presumption and intendment in favor of the act and sustain it unless it is invalid beyond reasonable doubt. *Mills* v. *Gaynor*, 136 Conn. 632, 637, 73 A. 2d 823; *Lyman* v. *Adorno*, 133 Conn. 511, 514, 52 A. 2d 702; *Walkinshaw* v. *O'Brien*, 130 Conn. 122, 134, 32 A. 2d 547; *Beach* v. *Bradstreet*, 85 Conn. 344, 349, 82 A. 1030.

It is a fundamental principle of law that the power to appropriate private property for public use is an attribute of sovereignty and essential to the existence of government. 1 Nichols, Eminent Domain (3d Ed.) §§ 1.14, 3.1; 18 Am. Jur. 635, § 7. It attaches to every man's land and is paramount to his right of ownership. *Water Commissioners* v. *Johnson*, 86 Conn. 151, 164, 84 A. 727. It lies dormant in the state until set in motion by legislative enactment. *Clark* v. *Saybrook*,

21 Conn. 313, 324. The legislature itself may exercise the power or may delegate that right to another. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 435, 37 A. 1070. But, whether exercised by the one or the other, the use of the power is always subject to the prohibitions found in the state constitution that (1) private property shall not be taken for public use without just compensation, and (2) no person shall be deprived of his property without due course of law. Conn. Const. Art. 1 §§ 9, 11.

The defendants' claims are stated in the footnote.[1] Several of them seem to indicate concern only with the phraseology of the act. Some, it will be observed, appear more to challenge form than to question substance. It is urged, for example, that the act is unconstitutional because it contains no express declaration that the transmission and the sale of natural gas are to serve a public use. A positive declaration of that

---

[1] The act is unconstitutional, according to the defendants, because:

(a) It contains no declaration of the necessity for condemning property within the state of Connecticut.

(b) It contains no declaration to the effect that its purpose is to serve a public use within the state of Connecticut.

(c) It imposes no duty upon the plaintiff to use property condemned under the general provisions of the act for said public use or to dedicate it to a public use within the state of Connecticut.

(d) It imposes no duty upon the plaintiff to supply natural gas for any public use within the state of Connecticut.

(e) Section 7 of the act prohibits the plaintiff from supplying natural gas to any citizen or resident in the state except to a person, firm, corporation or municipality authorized to transmit or sell gas within the area to be supplied by the plaintiff.

(f) Section 7 of the act allows the plaintiff to institute condemnation proceedings for reasons other than the benefit to the general public of the state of Connecticut.

(g) The provisions of § 1 of the act permit the plaintiff to condemn land for purposes which are not for the public good.

(h) Under § 5 of the act, the plaintiff may take property without adequate provision for the payment of damages to the owners of the property so taken.

nature, however, is not essential. As long as the act (§ 1) provides that the plaintiff may take "such lands, rights of way, easements or other interests in land" as are necessary for the installation and operation of pipe lines, the General Assembly has declared, in effect, that the property to be so taken is for a public use. *New York, N. H. & H. R. Co.* v. *Long*, supra, 436. This follows from the fact that the mere delegation of authority to condemn has always been considered a sufficient declaration that the use is public. See *State* v. *McCook*, 109 Conn. 621, 626, 147 A. 126; *Water Commissioners* v. *Johnson*, supra, 157.

Nor is the act invalid because it fails to declare the necessity for condemning the defendants' property. It is, of course, true that the necessity of taking property for a particular public use is a legislative question. *Waterbury* v. *Platt. Bros. & Co.*, 76 Conn. 435, 440, 56 A. 856. This does not require the General Assembly to resolve the question in every instance, although it may do so if it wishes. *Water Commissioners* v. *Manchester*, 89 Conn. 671, 679, 96 A. 182. It may, however, empower another agency to determine what property is necessary for the public use, as it did in passing the act of 1950. See *Adams* v. *Greenwich Water Co.*, 138 Conn. 205, 213, 83 A. 2d 177. Such a delegation of power is not objectionable on constitutional grounds and is thoroughly approved. *Water Commissioners* v. *Johnson*, supra, 158.

Another claim is that the act imposes no duty upon the plaintiff to apply the condemned land to any public use. If by this the defendants mean that after acquiring a right of way in their lands the plaintiff may decide to use it, say, as a section of a race track or for some objective equally foreign to the purpose for which the property is to be taken, it is sufficient to observe that an obligation to devote the easement to the specified

public use authorized by the legislature grows out of the acceptance and exercise of the delegated power of eminent domain. *Water Commissioners* v. *Manchester,* 87 Conn. 193, 200, 87 A. 870. Any legal obligation may, of course, be dishonored. That is one reason why courts exist. Should the plaintiff breach its duty in the manner suggested, there is ample judicial machinery available to the defendants to rectify the wrong. A claim of the nature under discussion can be made in almost every condemnation case. It amounts to nothing more than a legal bugaboo. By exercising the power of eminent domain granted by the act, the plaintiff becomes bound to devote the property acquired to the purpose for which the legislature has authorized the taking, namely, the transmission of natural gas for sale as specified.

It is further claimed that the act is invalid because the plaintiff is not to supply gas directly to the public. Under the certificate issued by the federal power commission, the plaintiff may sell its product in Connecticut only to certain specified utility corporations already engaged in distributing gas to the public, without discrimination, within the areas served by them. A taking of property for this authorized purpose is none the less a taking for public use. *Matlock* v. *Bloomington Water Co.,* 196 Ind. 271, 279, 146 N. E. 852; *Calor Oil & Gas Co.* v. *Franzell,* 128 Ky. 715, 731, 109 S. W. 328; *Nichols* v. *Central Virginia Power Co.,* 143 Va. 405, 418, 130 S. E. 764; *State ex rel. Dominick* v. *Superior Court,* 52 Wash. 196, 202, 100 P. 317; 2 Nichols, Eminent Domain (3d Ed.) § 7.523[1].

Nor is there any merit in the claim that the act permits the plaintiff to take private property without making adequate provision for the payment of damages to the owner. As previously pointed out, one of the constitutional restrictions is that just compensation shall

be paid for the appropriating of private property for public use. Conn. Const. Art. 1 § 11. The act, however, fully safeguards this constitutional right. Section 1 provides that a corporation qualifying under the act shall be held to pay all damages that may arise to any person or persons from the taking. Section 4 sets up procedure to be followed when the parties cannot agree as to the amount of damages. Compensation is determined by a committee of three disinterested persons, a method which Connecticut has traditionally pursued in comparable situations. Except as provided in § 5, the property cannot be entered upon and used by the corporation until the amount of the damages are paid to the party or parties to whom the damages are due, or deposited for his or their use with the court. It is only upon the payment of the committee's award or the depositing of the amount in court that the corporation acquires any interest in the property taken. Section 5 permits the court to allow immediate entry upon the property only when public interests are prejudiced by the delay, and then only upon the corporation's depositing a sum, set by the court, to protect the owner from loss. This section likewise follows traditional Connecticut legislative policy. See General Statutes § 7182. The purpose is to implement the power of eminent domain. *Housing Authority* v. *Pezenik*, 137 Conn. 442, 449, 78 A. 2d 546. From the foregoing review, it is obvious that the General Assembly has made certain that an owner will receive the just compensation to which a taking of his property entitles him.

We are unable to discover any merit in the several grounds advanced by the defendants. Moreover, if the question of claimed unconstitutionality is examined in its broadest aspect, the act can withstand any challenge. The General Assembly could legally authorize the plaintiff to exercise the power of eminent domain

if, but only if, (1) the use to which the plaintiff proposes to put the property is a public use, (2) there is a public necessity that property be taken, and (3) ample provision is made for the payment of just compensation to the owners and due process of law is afforded them. These factors have been met.

The use is public. The plaintiff is a corporation in the business of serving the public, through other companies, with a commodity which, while not as vital as water, is comparable to electricity and promotes the health and welfare of large groups of the people of the state. The proposed taking is to the advantage of the communities to be serviced and is available for the benefit of the public without discrimination. The use thus meets the test enunciated in *Connecticut College* v. *Calvert*, 87 Conn. 421, 427, 88 A. 633. The plaintiff, engaged as it is in public service activities, falls directly into the third category of those listed in the *Calvert* case as rendering services for a public use.

The delegation by the General Assembly of authority to determine the existence of necessity is, as we have pointed out, valid. "In such cases the condemnor is vested, primarily at least, with the power to determine what land is necessary to be taken, and this determination is conclusive unless and until it is successfully attacked for unreasonableness, bad faith or abuse of power." *Water Commissioners* v. *Manchester*, 89 Conn. 671, 679, 96 A. 182; *State* v. *McCook*, 109 Conn. 621, 628, 147 A. 126; *Water Commissioners* v. *Johnson*, 86 Conn. 151, 159, 84 A. 727.

Finally, the constitutional restrictions have not been violated. Ample provision has been made to insure the payment of just compensation for the taking, and due process, though not questioned by the defendants, is thoroughly provided for. We hold the act to be constitutional.

The second question upon which the parties seek our advice is addressed to the defendants' claim that, even though the act of 1950 is constitutional, it does not permit the plaintiff to take a temporary interest in their land.

It is within the province of the legislature to determine both the quantity and the quality of the estate which a condemnor may acquire. 3 Nichols, Eminent Domain (3d Ed.) § 9.2[1]. Thus, authority may be granted to take the fee or an easement. *Driscoll* v. *New Haven,* 75 Conn. 92, 99, 52 A. 618. The legislature may likewise authorize the taking of an interest which is either permanent or temporary. *Waterbury* v. *Platt Bros. & Co.,* 75 Conn. 387, 392, 53 A. 958. However, when it delegates to another the power to exercise the right of eminent domain, the extent of the power is limited by the express terms or clear implications of the statute authorizing its exercise. *Connecticut Light & Power Co.* v. *Bennett,* 107 Conn. 587, 593, 141 A. 654. Since a public use indefinite in duration differs from one that is temporary, authority to take an interest of the former kind does not necessarily imply the power to take one of the latter. *Waterbury* v. *Platt Bros. & Co.,* supra. The statute, however, should not be interpreted in such a way as to thwart the purpose for which it was enacted. *West Hartford* v. *Talcott,* 138 Conn. 82, 90, 82 A. 2d 351; 1 Nichols, op. cit., p. 234.

It is often necessary to take private property temporarily for public purposes. Statutes which have failed to grant that authority in express terms have frequently been construed to do so by implication. *Jerome* v. *Ross,* 7 Johns. Ch. 315, 342; *Hepburn* v. *Jersey City,* 67 N. J. L. 114, 116, 50 A. 598; *Wheelock* v. *Young,* 4 Wend. 647, 651; *Weitzner* v. *Stichman,* 271 App. Div. 255, 259, 64 N. Y. S. 2d 50, aff'd, 296 N. Y. 907, 72 N. E. 2d 625; *Brady* v. *Road Directors,* 148 Md. 493, 507, 129

A. 682; 11 McQuillin, Municipal Corporations (3d Ed.) § 32.18; see *McKeon* v. *New York, N. H. & H. R. Co.,* 75 Conn. 343, 349, 53 A. 656. The act now before us authorizes the taking of interests in land for the "construction" of the pipe line. The temporary easement is necessary to facilitate that construction. In that regard it is different in kind from the temporary easement sought in *Waterbury* v. *Platt Bros. & Co.,* 75 Conn. 387, 53 A. 958, upon which the defendants rely. The temporary easement in that case was sought to make possible a use distinct from that for which the legislature had granted the power of eminent domain. We construe the act of 1950 to authorize by implication the taking of a temporary interest in land which is reasonably necessary to carry out the purposes for which the taking of permanent easements is authorized.

Indeed, grave doubt might be expressed as to the right of the plaintiff to take the entire fifty feet permanently. The property which it is privileged to take is restricted to that which will reasonably serve the public use; more than that would, in effect, be a taking for a private use and, hence, illegal as an abuse of power. *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369, 85 A. 636; 3 Nichols, Eminent Domain (3d Ed.) § 9.2[2].

Our answers to the questions propounded are these: "No" to question (A); "Yes" to question (B).

In this opinion the other judges concurred.